**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MONSTER ENERGY COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>CHEN MOU REN, et al.,<br><br>Defendants. | ) | Case No. 15-cv-0277<br><br>**Judge Jorge L. Alonso**<br><br>**Magistrate Judge Michael T. Mason** |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND A STATUTORY DAMAGES AWARD AS TO DEFENDANT ULGEN ACCESSORIES**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Plaintiff Monster Energy Company ("Plaintiff" or "MEC") submits this Motion for Summary Judgment and a Statutory Damages Award against Defendant Meng Chun Jing, Meng Chun Lin, and Anna Meng d/b/a ULGEN ACCESSORIES (collectively, "Defendant" or "Defendant ULGEN ACCESSORIES").

**TABLE OF CONTENTS**


I. INTRODUCTION ........ 1

A. MEC's Trademarks ........ 3

B. Defendant's Unlawful Activities ........ 4

C. Procedural History ........ 4

II. ARGUMENT ........ 6

A. Summary Judgment Standard ........ 6

B. MEC Is Entitled to Summary Judgment Against Defendant on Its Trademark Infringement and Counterfeiting Claim ........ 6

i. The MONSTER ENERGY Trademarks Are Federally Registered and Valid .. 7

ii. Defendant Sold or Offered Goods in Commerce without MEC's Authorization ........ 7

iii. Defendant's Use of Counterfeit MONSTER ENERGY Trademarks Causes a Likelihood of Confusion and Infringes as a Matter of Law ........ 8

C. MEC Is Entitled to Summary Judgment on Its False Designation of Origin Claim.. 13

D. MEC Is Entitled to Summary Judgment on Its Illinois Uniform Deceptive Trade Practices Act Claim ........ 13

III. MEC IS ENTITLED TO STATUTORY DAMAGES ........ 14

A. Statutory Damages are Appropriate in this Case ........ 14

B. Defendant's Wide Exposure over the Internet Merits a Substantial Statutory Damages Award ........ 17

C. The Value of the MONSTER ENERGY Trademarks Justifies a High Statutory Damages Award ........ 18

D. The Requested Statutory Damages Award Must Sufficiently Deter Defendant and Similar Online Counterfeit Sellers ........ 19

IV. MEC IS ENTITLED TO PERMANENT INJUNCTIVE RELIEF ........ 20

V. MEC IS ENTITLED TO ATTORNEY'S FEES AND COSTS ........ 21

VI. CONCLUSION ........ 21

**TABLE OF AUTHORITIES**

**Cases**

*All Star Championship Racing, Inc. v. O'Reilly Auto. Stores, Inc.*,
940 F. Supp. 2d 850 (C.D. Ill. Apr. 18, 2013) .......... 13

*Am. Broad. Co. v. Maljack Prods., Inc.*,
34 F. Supp. 2d 665 (N.D. Ill. 1998) .......... 13

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) .......... 6

*Burberry Ltd. v. Designers Imps., Inc.*,
No. 07-cv-3997, 2010 U.S. Dist. LEXIS 3605 (S.D.N.Y. Jan. 19, 2010) .......... 18, 21

*CAE, Inc. v. Clean Air Eng'g Inc.*,
267 F.3d 660 (7th Cir. 2001) .......... 8, 9, 10, 12

*Calvin Klein Trademark Trust, Calvin Klein, Inc. and Warnaco Inc. v. The Partnerships, et al.*,
No. 1:14-cv-09070 (N.D. Ill. Jan. 14, 2015) .......... 18, 20

*Chi-Boy Music v. Charlie Club*,
930 F.2d 1224 (7th Cir. 1991) .......... 16

*Coach Inc., et al. v. The Treasure Box, Inc.*,
2013 U.S. Dist. LEXIS 76607 (N.D. Ind. May 31, 2013) .......... 9

*Conair Corporation v. The Partnerships, et al.*,
No. 1:14-cv-06670 (N.D. Ill. Oct. 30, 2014) .......... 18, 20

*Deckers Outdoor Corporation v. The Partnerships, et al.*,
No. 1:14-cv-03552 (N.D. Ill. July 8, 2014) .......... 18, 20

*Door Sys. v. Pro-Line Door Sys.*,
83 F.3d 169 (7th Cir. 1996) .......... 9

*Dorr-Oliver, Inc. v. Fluid-Quip, Inc.*,
94 F.3d 376 (7th Cir. 1996) .......... 10

*Eli Lilly & Co. v. Natural Answers, Inc.*,
233 F.3d 456 (7th Cir. 2000) .......... 9

*G. Heileman Brewing Co., Inc. v. Anheuser-Busch, Inc.*,
873 F.2d 985 (7th Cir. 1989) .......... 10

*Johnny Blastoff, Inc. v. Los Angeles Rams Football Co.*,
188 F. 3d 427 (7th Cir. 1999) .......... 13

*Libman Co. v. Vining Indus., Inc.*,
69 F.3d 1360 (7th Cir.1995) .......................................................................... 11

*Lorillard Tobacco Co. v. J.J. Shell Food Mart, Inc.*,
No. 03-cv-5506, 2005 U.S. Dist. LEXIS 26626 (N.D. Ill. Oct. 27, 2005) ....................... 16

*Lorillard Tobacco Co. v. S & M Cent. Serv. Corp.*,
2004 U.S. Dist. LEXIS 22563 (N.D. Ill. Nov. 5, 2004)................................ 14, 15, 16, 18

*Louis Vuitton Malletier, et al. v. Veit*,
211 F. Supp. 2d 567 (E.D. Pa. 2002) .............................................................. 17

*Louis Vuitton Malletier, S.A. v. Mosseri*,
No. 07-cv-2620, 2009 U.S. Dist. LEXIS 100851 (D.N.J. Oct. 28, 2009) ........................ 17

*Michael Kors, L.L.C. v. Busheng Wang, et al.*,
No. 15-cv-00125 (N.D. Ill. Mar. 25, 2015)............................................................ 18, 20

*Microsoft Corp. v. Rechanik*,
249 F. App'x 476 (7th Cir. 2007) ........................................................................ 9

*Neopost Industrie B.V. v. PFE Int'l Inc.*,
403 F. Supp. 2d 669 (N.D. Ill. 2005) .............................................................. 6, 13

*Packman v. Chi. Tribune Co.*,
267 F.3d 628 (7th Cir. 2001) ............................................................................ 6

*Phillip Morris USA Inc. v. Marlboro Express*,
No. 03-cv-1161, 2005 U.S. Dist. LEXIS 40359 (E.D.N.Y. Aug. 26, 2005) .................... 20

*Polo Ralph Lauren, L.P. v. 3M Trading Co.*,
No. 97-cv-4824, 1999 U.S. Dist. LEXIS 7913 (S.D.N.Y. Mar. 23, 1999)....................... 20

*Rolex Watch U.S.A., Inc. v. Jones*,
No. 99-cv-2359, 2002 U.S. Dist. LEXIS 6657 (S.D.N.Y. Apr. 17, 2002) ....................... 17

*Sands, Taylor & Wood Co. v. Quaker Oats Co.*,
978 F.2d 947 (7th Cir. 1992) ........................................................................ 11, 14, 19

*Sara Lee v. Bags of New York, Inc.*,
36 F. Supp. 2d 161 (S.D.N.Y. 1999)................................................................ 16

*Smith Fiberglass Prods. v. Ameron, Inc.*,
7 F.3d 1327 (7th Cir. 1993) ............................................................................ 8

*Spex, Inc. v. Joy of Spex, Inc.*,
847 F. Supp. 567 (N.D. Ill. 1994) .................................................................. 13

*Tiffany (NJ) LLC v. Dong*,
No. 11-cv-2183, 2013 U.S. Dist. LEXIS 114986 (S.D.N.Y. Aug. 9, 2013)..................... 17

*Trans Union LLC v. Credit Research, Inc.*,
142 F. Supp. 2d 1029 (N.D. Ill. 2001) ................................................................... 11

**Statutes**

15 U.S.C. § 1057(b) ........................................................................................... 7

15 U.S.C. § 1065........................................................................................... 3, 7

15 U.S.C. § 1114........................................................................................... 6

15 U.S.C. § 1115(a) ........................................................................................... 7

15 U.S.C. § 1115(b) ........................................................................................... 7

15 U.S.C. § 1116(a) ........................................................................................... 20

15 U.S.C. § 1117(a) ........................................................................................... 21

15 U.S.C. § 1117(b) ........................................................................................... 21

15 U.S.C. § 1117(c) ........................................................................... 14, 15, 16, 20

15 U.S.C. § 1117(c)(1)........................................................................................ 14

15 U.S.C. § 1117(c)(2)...................................................................... 14, 15, 20

15 U.S.C. § 1125(a) ........................................................................................... 13

15 U.S.C. § 1127........................................................................................... 8

17 U.S.C. § 504(c) ........................................................................................... 16

Fed. R. Civ. P. 56(a) ........................................................................................... 6

## MEMORANDUM OF LAW

Defendant ULGEN ACCESSORIES is promoting, advertising, marketing, distributing, offering for sale, and selling counterfeit products including, but not limited to, hats and/or beanies bearing counterfeit versions of MEC's federally registered trademarks, through its fully interactive commercial Internet store operating under the Online Marketplace Account identified as ULGEN ACCESSORIES at the URL aliexpress.com/store/1390554[1] ("Defendant's Internet Store"). Accordingly, MEC respectfully requests that this Court grant summary judgment in favor of MEC and against Defendant ULGEN ACCESSORIES for all pending claims, including federal trademark infringement and counterfeiting, false designation of origin, and violation of the Illinois Uniform Deceptive Trade Practices Act.

## I. INTRODUCTION

MEC is a nationwide leader in the business of developing, marketing, selling and distributing beverages, including energy drinks. *See* Declaration of Bruce Kingsland, Docket Entry 12 at ¶ 4 (the "Kingsland Declaration"). MEC is the owner of numerous trademark registrations for its MONSTER ENERGY trademarks (collectively, the "MONSTER ENERGY Trademarks"). *Id.* at ¶ 5. In 2002, long before Defendant's acts described herein, MEC launched its MONSTER ENERGY® brand of drinks, bearing its now famous mark ("Claw Icon Mark") and MONSTER ENERGY mark. *Id.* at ¶ 4. A true and correct representation of MEC's original MONSTER ENERGY® drink is shown below:

[1] See line 196 of the Defendant Online Marketplace Accounts section of Third Amended Schedule A.



*Id.*

In addition to its use on its energy drinks, MEC has continuously used the MONSTER ENERGY Trademarks on and in connection with the creation and distribution of a large variety of products, including, but not limited to, hats, beanies, stickers, clothing items, helmets, headgear, sports gear, and sports bags that bear Claw Icon Mark, MONSTER™ mark, and/or MONSTER ENERGY® mark (collectively, the "Monster Energy Products"). *Id.* at ¶ 7. These items have been worn or used by numerous high profile athletes and entertainers sponsored by MEC. *Id.* MEC has also licensed the MONSTER ENERGY Trademarks to third parties for use on stickers, clothing items, and sports bags. *Id.* MEC has promoted its MONSTER™ drinks and Monster Energy Products in interstate and intrastate commerce, including commerce in the State of Illinois, and in this Judicial District. *Id.*

MEC has expended substantial time, money, and other resources in developing, advertising, and otherwise promoting the MONSTER ENERGY Trademarks. *Id.* at ¶ 8. As a result, products bearing the MONSTER ENERGY Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being products sourced from MEC. *Id.* Because of MEC's advertising and promotional efforts and its continuous use of the MONSTER ENERGY Trademarks for more than a decade, MEC is among the most recognized

energy drink brands in the United States, and the MONSTER ENERGY Trademarks have become famous. *Id.* at ¶ 9.

This action was filed by MEC to address Defendant ULGEN ACCESSORIES' selling and offering for sale of knockoff products featuring unauthorized counterfeits of the MONSTER ENERGY Trademarks (collectively, the "Counterfeit Monster Energy Products") through Defendant's Internet Store. MEC seeks to stop Defendant's ongoing counterfeiting and infringement of its registered trademarks, as well as to protect unknowing consumers from purchasing low-quality Counterfeit Monster Energy Products over the Internet.

MEC moves for summary judgment against Defendant ULGEN ACCESSORIES for federal trademark infringement and counterfeiting (Count I), false designation of origin (Count II), and violation of the Illinois Uniform Deceptive Trade Practices Act (Count III). There is no genuine issue of material fact as to whether Defendant ULGEN ACCESSORIES is engaged in advertising, promoting, distributing, selling, and/or offering for sale Counterfeit Monster Energy Products on the Defendant's Internet Store. Further, MEC requests that this Court include a finding that Defendant's conduct was willful.

### A. MEC's Trademarks

MEC is the owner of numerous U.S. trademark registrations for its MONSTER ENERGY Trademarks (defined above as, collectively, the "MONSTER ENERGY Trademarks"). Plaintiff's Rule 56.1 Statement of Undisputed Facts at ¶ 1 ("Rule 56.1 Statement"). The MONSTER ENERGY Trademarks are registered with the United States Patent and Trademark Office on the Principal Register. *Id.* The U.S. registrations for the MONSTER ENERGY Trademarks are valid, subsisting, and in full force and effect. *Id.* Pursuant to 15 U.S.C. § 1065, U.S. Trademark Registration Nos. 2,903,214; 3,057,061; and 3,134,842 are incontestable. *Id.* The MONSTER

ENERGY Trademarks have been used exclusively and continuously by MEC, and have never been abandoned. *Id*.

**B. Defendant's Unlawful Activities**

MEC learned that Defendant ULGEN ACCESSORIES was selling and offering for sale knockoff products featuring unauthorized counterfeits of the MONSTER ENERGY Trademarks (defined above as the "Counterfeit Monster Energy Products") through the Online Marketplace Account identified as ULGEN ACCESSORIES at the URL aliexpress.com/store/1390554 (defined above as "Defendant's Internet Store"). Rule 56.1 Statement at ¶ 2. MEC examined the images of the Counterfeit Monster Energy Products shown on Defendant's Internet Store and determined they were counterfeit. *Id.* MEC's investigator subsequently placed an order for Counterfeit Monster Energy Products on the Defendant's Internet Store. *Id.* at ¶ 3. Defendant then instructed MEC's investigator to submit payment for the Counterfeit Monster Energy Products to the PayPal account associated with the e-mail address hncraft@hncraft.com. *Id.* MEC has not authorized or licensed Defendant to use any of the MONSTER ENERGY Trademarks, or to sell Monster Energy Products on the Defendant's Internet Store. *Id.* at ¶ 4. Defendant ULGEN ACCESSORIES is not an authorized retailer of genuine Monster Energy Products. *Id.*

**C. Procedural History**

MEC filed this action on January 13, 2015. Docket Entry 1. On January 21, 2015, this Court, finding that evidence submitted by MEC demonstrated an immediate and irreparable injury, loss, or damage to MEC and a strong likelihood of success on the merits, properly exercised jurisdiction over Defendant and granted MEC's *Ex Parte* Motion for Entry of a Temporary Restraining Order (the "TRO"). Docket Entry 27. The TRO was subsequently converted into a Preliminary Injunction on February 18, 2015. Docket Entry 35. Consequently, this Court has twice found that MEC is likely to succeed on its *prima facie* case as demonstrated in both its

Motion for a Temporary Restraining Order (*see,* Docket Entries 7 and 27) and its Motion for a Preliminary Injunction (*see*, Docket Entries 31 and 35).

Pursuant to the terms of the TRO, PayPal, Inc. ("PayPal") duly located and restrained two PayPal accounts associated with the e-mail address hncraft@hncraft.com ("Defendant's PayPal Accounts"), freezing approximately $15,941.95 USD. Gaudio Declaration at ¶ 2. PayPal also provided account details (the "Account Information") for Defendant's PayPal Accounts. *Id.* at ¶ 3. The Account Information associated with both of Defendant's PayPal Accounts is incomplete, including the business name, business URL, customer service phone number, social security number, and taxpayer identification number. *Id.* Even though much of the Account Information is incomplete, the same home telephone number (+86 15057933622) and e-mail address (hncraft@hncraft.com) are provided in the Account Information for both of Defendant's PayPal Accounts. *Id.* In addition, dozens of overlapping IP addresses in the Account Information indicate that both of Defendant's PayPal Accounts were logged into from the same computer. *Id.*

MEC filed an Amended Complaint on February 12, 2015, to which Defendant filed an Answer on March 12, 2015. Docket Entries 30 and 39. The Court entered Default and Default Judgment (awarding statutory damages of $2 million per Defendant) against defaulting defendants on March 25, 2015, with the exception of certain defendants, including Defendant ULGEN ACCESSORIES. Docket Entry 50. Plaintiff filed its Second Amended Complaint on April 14, 2015, alleging federal trademark infringement and counterfeiting (Count I), false designation of origin (Count II), and violation of the Illinois Uniform Deceptive Trade Practices Act (Count III), and seeking statutory damages and injunctive relief. Docket Entry 64. Defendant ULGEN ACCESSORIES subsequently filed an Answer to Plaintiff's Second Amended Complaint on April 27, 2015. Docket Entry 68.

## II. ARGUMENT

### A. Summary Judgment Standard

A district "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The district court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Packman v. Chi. Tribune Co.*, 267 F.3d 628, 637 (7th Cir. 2001). A genuine dispute as to any material fact only exists if a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### B. MEC Is Entitled to Summary Judgment Against Defendant on Its Trademark Infringement and Counterfeiting Claim

Section 32 of the Lanham Act, 15 U.S.C. § 1114, provides in pertinent part:

> (1) Any person who shall, without the consent of the registrant –
> (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods . . . on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; . . . shall be liable in a civil action by the registrant for the remedies hereinafter provided.

15 U.S.C. § 1114.

To prove a *prima facie* case of infringement, MEC must show (1) the MONSTER ENERGY Trademarks are distinctive enough to be worthy of protection; (2) Defendant is not authorized to use the MONSTER ENERGY Trademarks; and (3) Defendant's use of the MONSTER ENERGY Trademarks causes a likelihood of confusion as to the origin or sponsorship of Defendant's products. *See Neopost Industrie B.V. v. PFE Int'l Inc.*, 403 F. Supp. 2d 669, 684 (N.D. Ill. 2005) (citation omitted). MEC satisfies all three requirements of the Lanham Act to successfully bring a trademark infringement and counterfeiting claim.

i. The MONSTER ENERGY Trademarks Are Federally Registered and Valid

Regarding the first element, MEC's MONSTER ENERGY Trademarks have been registered with the United States Patent and Trademark Office on the Principal Register. Rule 56.1 Statement at ¶ 1. The issuance of a federal registration on the Principal Register constitutes "*prima facie* evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the registration…." 15 U.S.C. § 1115(a); *see also* 15 U.S.C. § 1057(b). Furthermore, U.S. Trademark Registration Nos. 2,903,214; 3,057,061; and 3,134,842 are incontestable under 15 U.S.C. § 1065. Rule 56.1 Statement at ¶ 1. Incontestable status under 15 U.S.C. § 1065 provides that the registrations for the MONSTER ENERGY Trademarks are conclusive evidence of the validity of MEC's registered trademarks and of the registration of the marks, of MEC's ownership of the trademarks, and of MEC's exclusive right to use the marks in commerce. 15 U.S.C. §§ 1115(b), 1065. Therefore, there can be no genuine issue of material fact as to whether MEC has valid and exclusive rights in the MONSTER ENERGY Trademarks.

ii. Defendant Sold or Offered Goods in Commerce without MEC's Authorization

MEC has not authorized or licensed Defendant to use any of the MONSTER ENERGY Trademarks, or to sell Monster Energy Products on the Defendant's Internet Store. Rule 56.1 Statement at ¶ 4. Defendant ULGEN ACCESSORIES is not an authorized retailer of genuine Monster Energy Products. *Id.*

iii. <u>Defendant's Use of Counterfeit MONSTER ENERGY Trademarks Causes a Likelihood of Confusion and Infringes as a Matter of Law</u>

The side-by-side comparison below shows that Defendant ULGEN ACCESSORIES' unauthorized marks are spurious marks which are identical with, or substantially indistinguishable from, the registered MONSTER ENERGY Trademarks, and thus are counterfeit. 15 U.S.C. § 1127 (definition of "counterfeit").

<table>
<tr><th><u>MONSTER ENERGY Trademark</u></th><th><u>ULGEN ACCESSORIES' Counterfeit Monster Energy Product</u></th></tr>
<tr><td></td><td rowspan="3"></td></tr>
<tr><td><u>Genuine Monster Energy Product</u></td></tr>
<tr><td></td></tr>
</table>

In a trademark infringement case, likelihood of consumer confusion is ordinarily a question of fact. *CAE, Inc. v. Clean Air Eng'g Inc.*, 267 F.3d 660, 677 (7th Cir. 2001) (citing *Smith Fiberglass Prods. v. Ameron, Inc.*, 7 F.3d 1327, 1329 (7th Cir. 1993)). However, "if the evidence

is so one-sided that there can be no doubt about how the question should be answered," the question of whether likelihood of confusion exists may be resolved on summary judgment. *Id*. (citing *Door Sys. v. Pro-Line Door Sys.*, 83 F.3d 169, 173 (7th Cir. 1996)).

Likelihood of confusion may be resolved on summary judgment and, in fact, can be presumed in counterfeiting cases because counterfeits, by their very nature, cause confusion. *Microsoft Corp. v. Rechanik*, 249 F. App'x 476, 479 (7th Cir. 2007) (unpublished) (where one produces counterfeit goods in an apparent attempt to capitalize upon the popularity of, and demand for, another's product, there is a presumption of likelihood of confusion) (citation omitted). When the infringer has used "the precise trademark's likeness on the very type of goods that the trademark holder sells . . . the defendant has 'intentionally copie[d] a trademark design with the intent to derive a benefit from the reputation of another' and a likelihood of confusion can be presumed." *Coach Inc., et al. v. The Treasure Box, Inc.*, 2013 U.S. Dist. LEXIS 76607, at *10-11 (N.D. Ind. May 31, 2013) (granting partial summary judgment, noting that "several courts have recognized that in counterfeit cases ... a likelihood of confusion can be presumed") (citations omitted); *Microsoft Corp.*, 249 F. App'x at 479. Accordingly, Defendant's use of the counterfeit marks creates a likelihood of confusion regarding the source of the goods.

The result is the same when considered in light of the Seventh Circuit's seven enumerated factors to determine whether there is a likelihood of confusion, namely: (1) similarity between the marks in appearance and suggestion; (2) similarity of the products; (3) area and manner of concurrent use; (4) degree of care likely to be exercised by consumers; (5) strength of complainant's mark; (6) actual confusion; and, (7) intent of the defendants to palm off their products as that of another. *Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 461-462 (7th Cir. 2000) (citation omitted). These factors are not a mechanical checklist, and "[t]he proper

weight given to each of [the] factors will vary from case to case." *Dorr-Oliver, Inc. v. Fluid-Quip, Inc.*, 94 F.3d 376, 381 (7th Cir. 1996). At the same time, although no one factor is decisive, the similarity of the marks, the intent of the defendant, and evidence of actual confusion are the most important considerations. *G. Heileman Brewing Co., Inc. v. Anheuser-Busch, Inc.*, 873 F.2d 985, 999 (7th Cir. 1989).

As stated above, as a matter of law, Defendant's Counterfeit Monster Energy Products create a likelihood of confusion. In addition, MEC also satisfies each of the Seventh Circuit's likelihood of confusion factors. Defendant is selling low-quality products that look similar to genuine Monster Energy Products and use counterfeits of the MONSTER ENERGY Trademarks. As such, the first and second likelihood of confusion factors weigh heavily in favor of MEC.

MEC also satisfies the third factor, namely, the area and manner of concurrent use. When considering the third factor, a court looks at "whether there is a relationship in use, promotion, distribution or sales between the goods or services of the parties." *CAE, Inc. v. Clean Air Eng'g Inc.*, 267 F.3d 660, 681 (7th Cir. 2001). A court also looks to whether the parties used the same channels of commerce, targeted the same general audience, and/or used similar marketing procedures. *Id*. Here, both MEC and Defendant sell products bearing the MONSTER ENERGY Trademarks to the same consumers. Thus, because Defendant targets the same consumers as MEC, this factor also weighs in favor of MEC.

Regarding the fourth factor, degree of consumer care, consumers purchasing Monster Energy Products are not a certain specialized, sophisticated group of people. Rather, the consumer base is a diverse group of people. "[W]hen a buyer class is mixed, the standard of care to be exercised by the reasonably prudent purchaser will be equal to that of the least sophisticated consumer in the class." *Trans Union LLC v. Credit Research, Inc.*, 142 F. Supp. 2d 1029, 1043

(N.D. Ill. 2001) (citation omitted). Taking into account the diverse group of Monster Energy consumers, consumers are very likely to be confused, so this factor favors MEC.

Due to their long-standing use and wide acceptance by the public, the MONSTER ENERGY Trademarks have become famous and associated with high quality Monster Energy Products. Kingsland Declaration at ¶ 9 and 22. MEC has expended substantial time, money, and other resources in developing, advertising, and otherwise promoting the MONSTER ENERGY Trademarks. *Id.* at ¶ 8. As a result, products bearing the MONSTER ENERGY Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being products sourced from MEC. *Id.* Because of MEC's advertising and promotional efforts and its continuous use of the MONSTER ENERGY Trademarks for more than a decade, MEC is among the most recognized energy drink brands in the United States, and the MONSTER ENERGY Trademarks have become famous. *Id.* at 9. Thus, the fifth factor, the strength of the marks, also weighs heavily in favor of MEC.

As for the sixth factor, MEC does not need to prove likelihood of confusion with evidence of actual confusion; instead, it merely needs to show *some* evidence of potential confusion. *See Libman Co. v. Vining Indus., Inc.*, 69 F.3d 1360, 1363 (7th Cir.1995); *see also Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 960 (7th Cir. 1992) (the Seventh Circuit has consistently found that a "plaintiff need not show actual confusion in order to establish likelihood of confusion."). In this case, actual confusion can be inferred because Defendant is selling knockoff versions of Monster Energy Products that use counterfeit MONSTER ENERGY Trademarks. Because the goods look nearly identical, consumers will be confused and think that Defendant's Counterfeit Monster Energy Products are genuine Monster Energy Products or are sponsored or endorsed by MEC. Thus, this factor weighs in favor of MEC.

In addition to point-of-sale confusion about the source of products sold on the Defendant's Internet Store, the Seventh Circuit has recognized that the Lanham Act's protections also extend to post-sale confusion of potential customers. *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 683 (7th Cir. 2001). Post-sale confusion refers to a situation in which, for example, a potential customer sees a product bearing the infringing label and mistakenly attributes the product to the brand owner, thereby influencing his buying decision, either positively or negatively. *Id.* That association also constitutes infringement of MEC's registered MONSTER ENERGY Trademarks. Prospective consumers who see inferior Counterfeit Monster Energy Products worn by others may mistakenly believe such goods to be genuine and may consequently develop a poor impression of MEC and the MONSTER ENERGY Trademarks. Kingsland Declaration at ¶ 21.

Regarding the seventh and final factor, Defendant is intentionally using the MONSTER ENERGY Trademarks to confuse and deceive the consuming public into thinking that Defendant's Counterfeit Monster Energy Products are manufactured by or emanate from MEC. By using counterfeits of the MONSTER ENERGY Trademarks, Defendant is purposefully attempting to benefit and trade off of MEC's goodwill and reputation. Therefore, the final factor regarding Defendant's intent also weighs heavily in MEC's favor.

In sum, it is manifestly clear that each of the seven likelihood of confusion factors weighs heavily in favor of MEC, and, therefore, as a matter of law, Defendant's use of counterfeits of the MONSTER ENERGY Trademarks creates a likelihood of confusion regarding the source of the goods. Therefore, MEC is entitled to summary judgment on its trademark infringement and counterfeiting claim.

### C. MEC Is Entitled to Summary Judgment on Its False Designation of Origin Claim

A plaintiff bringing a false designation of origin claim under 15 U.S.C. § 1125(a) must show that: (1) the plaintiff has a protectable trademark; and (2) a likelihood of confusion will exist as to the origin of plaintiff's products. *All Star Championship Racing, Inc. v. O'Reilly Auto. Stores, Inc.*, 940 F. Supp. 2d 850, 860 (C.D. Ill. Apr. 18, 2013) (*citing Johnny Blastoff, Inc. v. Los Angeles Rams Football Co.*, 188 F.3d 427, 436 (7th Cir. 1999)). This is the same test that is used for determining whether trademark infringement has occurred under the Lanham Act. *See Neopost*, 403 F. Supp. 2d at 684-685. Because the MONSTER ENERGY Trademarks are registered on the Principal Register, and MEC has established it is entitled to summary judgment on its trademark infringement and counterfeiting claim against Defendant (*supra*), MEC has also established that it is entitled to summary judgment on its false designation of origin claim.

### D. MEC Is Entitled to Summary Judgment on Its Illinois Uniform Deceptive Trade Practices Act Claim

In Illinois, courts resolve unfair competition and deceptive trade practices claims "according to the principles set forth under the Lanham Act." *Spex, Inc. v. Joy of Spex, Inc.*, 847 F. Supp. 567, 579 (N.D. Ill. 1994). Illinois courts look to federal case law and apply the same analysis to state infringement claims. *Id.* at 579 (citation omitted). The determination as to whether there is a likelihood of confusion is similar under both the Lanham Act and the Illinois Uniform Deceptive Trade Practices Act. *Am. Broad. Co. v. Maljack Prods., Inc.*, 34 F. Supp. 2d 665, 680-681 (N.D. Ill. 1998). Because MEC has established that it is entitled to summary judgment on its trademark infringement and counterfeiting claim against Defendant (*supra*), and the standard is the same under Illinois law, MEC has also established that it is entitled to summary judgment on its Illinois Uniform Deceptive Trade Practices Act claim.

## III. MEC IS ENTITLED TO STATUTORY DAMAGES

There is no genuine issue of material fact as to whether Defendant ULGEN ACCESSORIES has infringed the MONSTER ENERGY Trademarks through trademark counterfeiting. Further, there is no genuine issue of material fact as to whether Defendant's infringement was willful, because Defendant knew it was infringing the MONSTER ENERGY Trademarks. As such, MEC elects to recover an award of statutory damages as authorized by 15 U.S.C. § 1117(c) for trademark counterfeiting for Defendant's sale of Counterfeit Monster Energy Products.

The awarding of statutory damages serves dual interests in that it is remedial in nature, but also intended to protect an important public interest. *Sands, Taylor & Wood v. Quaker Oats Co.*, 34 F.3d 1340, 1347-48 (7th Cir. 1994). Given the broader economic losses and harm to the job market caused by counterfeiting, coupled with the possible dangers to consumers who are tricked into purchasing low quality, counterfeit products over the Internet, it is important to both penalize defendants and try to deter future violations. *Lorillard Tobacco Co. v. S & M Cent. Serv. Corp.*, 2004 U.S. Dist. LEXIS 22563, *18 (N.D. Ill. Nov. 5, 2004). Accordingly, MEC respectfully requests the Court's entry of an award of at least two million dollars ($2,000,000) against Defendant for willful counterfeiting of the MONSTER ENERGY Trademarks.

### A. Statutory Damages are Appropriate in this Case

Pursuant to the statutory damages provision of the Lanham Act, 15 U.S.C. § 1117(c), a plaintiff in a case involving the use of a counterfeit mark may elect to receive "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(1). When the counterfeiting is found to be willful, 15 U.S.C. § 1117(c)(2) provides for statutory damages of up to "$2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court

considers just." 15 U.S.C. § 1117(c)(2). "Willful infringement may be attributed to the defendant's actions where he had knowledge that his conduct constituted infringement or where he showed a reckless disregard for the owner's rights." *Lorillard Tobacco Co*, 2004 U.S. Dist. LEXIS 22563, *19-20. As such, knowledge need not be proven directly, but can be inferred from a defendant's conduct. *Id.* at 20.

MEC has expended substantial time, money, and other resources in developing, advertising, and otherwise promoting the MONSTER ENERGY Trademarks. Kingsland Declaration at ¶ 10. As a result, products bearing the MONSTER ENERGY Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being products sourced from MEC. *Id.* Because of MEC's advertising and promotional efforts and its continuous use of the MONSTER ENERGY Trademarks for more than a decade, MEC is among the most recognized energy drink brands in the United States, and the MONSTER ENERGY Trademarks have become famous. *Id.* at ¶ 11. Thus, Defendant's use of the Monster Energy Trademarks had to be willful, especially since Defendant used an exact copy of at least one of the MONSTER ENERGY Trademarks on the Counterfeit Monster Energy Products.

The above facts demonstrate that there can be no genuine dispute that Defendant willfully infringed and counterfeited the MONSTER ENERGY Trademarks. Therefore, the Court has the discretion to award statutory damages of up to $2,000,000 per counterfeit mark to Plaintiff. Since the Defendant has counterfeited one of Plaintiff's registered MONSTER ENERGY Trademarks, the Court may award statutory damages against Defendant of up to $2,000,000 in this case.

Although 15 U.S.C. § 1117(c) contains the dollar range for possible statutory damage awards, the only guidance provided by the statute for how to determine a damage award within the statutory dollar range is "as the court considers just." 15 U.S.C. § 1117(c). Courts interpreting

15 U.S.C. § 1117(c) have analogized case law applying the statutory damage provision of the Copyright Act contained in 17 U.S.C. § 504(c). *See Lorillard Tobacco Co.*, 2004 U.S. Dist. LEXIS 22563, *10; *Sara Lee v. Bags of New York, Inc.*, 36 F. Supp. 2d 161, 166 (S.D.N.Y. 1999).

The Seventh Circuit's standard for awarding statutory damages for copyright infringement under 17 U.S.C § 504(c) is articulated in *Chi-Boy Music v. Charlie Club*, 930 F.2d 1224, 1229 (7th Cir. 1991). Under the *Chi-Boy* standard, a court awarding statutory damages is "not required to follow any rigid formula," but instead "enjoys wide discretion." *Id*. In computing the award amount, a court may consider factors such as "the difficulty or impossibility of proving actual damages, the circumstances of the infringement, and the efficacy of the damages as a deterrent." *Id*. Courts in this district have also considered the significant value of a plaintiff's brand and the efforts taken to protect, promote and enhance that brand in determining the appropriate dollar figure for the award. *Lorillard Tobacco Co.*, 2004 U.S. Dist. LEXIS 22563, *16.

Further, because damages inquiries under Section 1117(c) consider both punitive and compensatory considerations, "there is no necessary mathematical relationship between the size of such an award and the extent or profitability of the defendant's wrongful activities." *Sara Lee*, 36 F. Supp. 2d at 165. Thus, courts have looked beyond restitution of profit and restoration of injury to award damages, holding that deterrence of future infringement by the defendant and others situated like him is an important factor. *Lorillard Tobacco Co. v. J.J. Shell Food Mart, Inc.*, No. 03-cv-5506, 2005 U.S. Dist. LEXIS 26626, *16 (N.D. Ill. Oct. 27, 2005). Courts have also held that damages awards limited to lost profits would have little to no deterrent effect on future violations – "a counterfeiter must fear more than just having to turn over his ill-gotten gains to the rightful owners." *See Lorillard Tobacco Co.*, 2004 U.S. Dist. LEXIS 22563, *17.

### B. Defendant's Wide Exposure over the Internet Merits a Substantial Statutory Damages Award

Defendant ULGEN ACCESSORIES' ability to reach a vast customer base by willfully selling Counterfeit Monster Energy Products over the Internet on the AliExpress marketplace platform merits a substantial statutory damages award. Defendant has the ability to "reach a virtually limitless number of potential customers worldwide." *Tiffany (NJ) LLC v. Dong*, No. 11-cv-2183, 2013 U.S. Dist. LEXIS 114986, at *17 (S.D.N.Y. Aug. 9, 2013) (awarding a total of $9 million in statutory damages, noting defendant's vast customer base). Defendant is able to reach a large base of active buyers with the AliExpress platform. As of May 27, 2015, Alexa's Traffic Ranks[2] ranked AliExpress.com as the 37th most trafficked website on the Internet, indicating that it gets millions of visitors annually. Gaudio Declaration at ¶ 4. As such, a substantial statutory damages award is justified. *See Rolex Watch U.S.A., Inc. v. Jones*, No. 99-cv-2359, 2002 U.S. Dist. LEXIS 6657, at *16 (S.D.N.Y. Apr. 17, 2002) (holding that an award of $25,000 for each category of trademarked goods would be inadequate in view of the virtually limitless number of available customers on the Internet, distinguishing cases where defendants had "storefront operations," and noting that one of defendant's websites had more than 90,000 visitors).

In similar cases involving willful Internet-based counterfeiting, courts often award high damages awards due in part to the wide market exposure that the Internet can provide. *See Louis Vuitton Malletier, S.A. v. Mosseri*, No. 07-cv-2620, 2009 U.S. Dist. LEXIS 100851, at *9 (D.N.J. Oct. 28, 2009) (awarding over $4 million in total statutory damages, finding that defendant's operation of its counterfeiting goods enterprise on the Internet exponentially increased the damages); *Louis Vuitton Malletier, et al. v. Veit*, 211 F. Supp. 2d 567, 584-85 (E.D. Pa. 2002)

---

[2] Alexa Traffic Ranks are based on a combination of the unique visitors to a website on a given day and the total number of page views of a website on a given day. The website with the highest combination of unique visitors and page views is ranked 1st.

(awarding $1,500,000 total and stating "the point of sale is very relevant to the statutory damages discussion" because “143 million Americans use the internet and represent the counterfeiter’s potential customer base”); *Burberry Ltd. v. Designers Imps., Inc.*, No. 07-cv-3997, 2010 U.S. Dist. LEXIS 3605, at *28 (S.D.N.Y. Jan. 19, 2010) (court awarded $1,500,000 in statutory damages representing $100,000 per mark per type of goods, finding that a large award was necessary because of “Defendant’s ability to reach a vast customer base through internet advertising”). Further, this Court has regularly awarded the statutory maximum in similar willful Internet-based counterfeiting cases. *See Michael Kors, L.L.C. v. Busheng Wang, et al.*, No. 15-cv-00125 (N.D. Ill. Mar. 25, 2015) (awarding $2 million in statutory damages per defendant); *Calvin Klein Trademark Trust, Calvin Klein, Inc. and Warnaco Inc. v. The Partnerships, et al.*, No. 1:14-cv-09070 (N.D. Ill. Jan. 14, 2015) (same); *Conair Corporation v. The Partnerships, et al.*, No. 1:14-cv-06670 (N.D. Ill. Oct. 30, 2014) (same); *Deckers Outdoor Corporation v. The Partnerships, et al.*, No. 1:14-cv-03552 (N.D. Ill. July 8, 2014) (same). This Court has also already awarded statutory damages of $2 million per defendant against the defaulting defendants in this case. Docket Entry 65 at ¶ 4.

Thus, MEC’s request for a high statutory damages award should be given favorable consideration in view of Defendant’s wide market exposure and ability to reach a vast customer base over the Internet with the AliExpress.com marketplace.

### C. The Value of the MONSTER ENERGY Trademarks Justifies a High Statutory Damages Award

In determining an appropriate damage award, this Court should be guided by the *Lorillard* case and consider the “significant value of [the Monster Energy] brand and the efforts taken to protect, promote and enhance that brand.” *Lorillard Tobacco Co.*, 2004 U.S. Dist. LEXIS 22563, *16. MEC is a nationwide leader in the business of developing, marketing, selling and distributing

beverages, including energy drinks. Kingsland Declaration at ¶ 3. In addition to its use on its energy drinks, MEC has continuously used the MONSTER ENERGY Trademarks on and in connection with the Monster Energy Products. *Id*. at ¶ 10. MEC has expended substantial time, money, and other resources in developing, advertising, and otherwise promoting the MONSTER ENERGY Trademarks. As a result, products bearing the MONSTER ENERGY Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being products sourced from MEC. Because of MEC's advertising and promotional efforts and its continuous use of the MONSTER ENERGY Trademarks for more than a decade, MEC is among the most recognized energy drink brands in the United States, and the MONSTER ENERGY Trademarks have become famous. As such, the goodwill associated with the MONSTER ENERGY Trademarks is of incalculable and inestimable value. *Id*.

The success of the Monster Energy brand has resulted in its significant counterfeiting. *Id*. at ¶ 10. Consequently, MEC has a worldwide anti-counterfeiting program and regularly investigates suspicious websites and online marketplace listings identified in proactive Internet sweeps and reported by consumers. *Id*. Thus, MEC's request for a high statutory damages award should be given favorable consideration in view of the value of the Monster Energy brand and the extensive steps being taken to protect, promote and enhance it.

### D. The Requested Statutory Damages Award Must Sufficiently Deter Defendant and Similar Online Counterfeit Sellers

Additionally, the remedy imposed under the statute must provide a sufficient deterrent effect to ensure that the guilty party will not engage in further infringing conduct. *Sands, Taylor & Wood*, 34 F.3d at 1348. For example, in *Phillip Morris USA Inc. v. Marlboro Express*, the Court stated that due to, "the size of the potential profit given the quantities of [counterfeit goods] involved, and the need for a substantial deterrent to future misconduct by defendants and other

counterfeit traffickers ... plaintiff is entitled to the maximum statutory award under 15 U.S.C. § 1117(c)(2)." No. 03-cv-1161, 2005 U.S. Dist. LEXIS 40359, *28 (E.D.N.Y. Aug. 26, 2005). *See also Polo Ralph Lauren, L.P. v. 3M Trading Co.*, No. 97-cv-4824, 1999 U.S. Dist. LEXIS 7913, at *18 (S.D.N.Y. Mar. 23, 1999) (concluding that a fairly substantial financial award is appropriate, "if for no other reason, to ensure adequate deterrence against the continuation of this conduct by these defendants").

Given the Court's clear discretion in determining the appropriate amount of the statutory damages award within the statutory limits of 15 U.S.C. § 1117(c), MEC respectfully requests the Court's entry of an award of at least two million dollars ($2,000,000) against Defendant ULGEN ACCESSORIES for the MONSTER ENERGY Trademark counterfeited by Defendant. MEC's request for damages is reasonable in light of prior awards against Internet-based counterfeiters.

## IV. MEC IS ENTITLED TO PERMANENT INJUNCTIVE RELIEF

In addition to the foregoing relief, MEC respectfully requests entry of a permanent injunction enjoining Defendant from selling Counterfeit Monster Energy Products or otherwise violating its rights in the MONSTER ENERGY Trademarks and transferring all assets in financial accounts operated by PayPal, Inc. and linked to Defendant, as well as any newly discovered assets, to MEC, including at least all injunctive relief previously awarded by this Court to MEC in the TRO and Preliminary Injunction pursuant to 15 U.S.C. § 1116(a). 15 U.S.C. § 1116(a); *See Michael Kors, L.L.C. v. Busheng Wang, et al.*, No. 15-cv-00125 (N.D. Ill. Feb. 18, 2015) (permanently enjoining and restraining defendants from selling counterfeit products); *Calvin Klein Trademark Trust, Calvin Klein, Inc. and Warnaco Inc. v. The Partnerships, et al.*, No. 1:14-cv-09070 (N.D. Ill. Jan. 14, 2015) (same); *Conair Corporation v. The Partnerships, et al.*, No. 1:14-cv-06670 (N.D. Ill. Oct. 30, 2014) (same); *Deckers Outdoor Corporation v. The Partnerships, et al.*, No. 1:14-cv-03552 (N.D. Ill. July 8, 2014) (same).

## V. MEC IS ENTITLED TO ATTORNEY'S FEES AND COSTS

Pursuant to 15 U.S.C. § 1117(a), a successful plaintiff may recover the costs of the action from a trademark infringer. 15 U.S.C. § 1117(a). Pursuant to 15 U.S.C. § 1117(b), in a case involving use of a counterfeit mark, the court shall, unless it finds extenuating circumstances, award a reasonable attorney's fee if the violation consists of intentionally using a mark, knowing such mark is a counterfeit mark, in connection with the sale, offering for sale, or distribution of goods. 15 U.S.C. § 1117(b). *See also Burberry, Ltd.*, 2010 U.S. Dist. LEXIS 3605, at *27. MEC respectfully requests entry of an award of its reasonable attorney's fees and costs because Defendant knowingly and willfully offered for sale and sold Counterfeit Monster Energy Products. MEC's counsel will submit an itemized fee affidavit of its total amount of attorney's fees and costs in connection with this case.

## VI. CONCLUSION

Based on the above, MEC respectfully requests this Court to enter an order granting summary judgment in favor of MEC and against Defendant for federal trademark infringement and counterfeiting (Count I), false designation of origin (Count II), and violation of the Illinois Uniform Deceptive Trade Practices Act (Count III). Finally, MEC requests that this Court award MEC at least two million dollars ($2,000,000) in statutory damages against Defendant for willful counterfeiting of the MONSTER ENERGY Trademark pursuant to 15 U.S.C. § 1117(c), enter a permanent injunction prohibiting Defendant from selling and offering for sale Counterfeit Monster Energy Products, transfer all assets in financial accounts operated by PayPal, Inc. and linked to Defendant, as well as any newly discovered assets, to MEC pursuant to 15 U.S.C. § 1116(a), and award MEC its reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1117(a) and (b).

Dated this 29th day of May 2015.

Respectfully submitted,

/s/ Justin R. Gaudio_______________

Kevin W. Guynn
Amy C. Ziegler
Justin R. Gaudio
Jessica L. Bloodgood
Greer, Burns & Crain, Ltd.
300 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
312.360.0080
312.360.9315 (facsimile)
kguynn@gbclaw.net
aziegler@gbclaw.net
jgaudio@gbclaw.net
jbloodgood@gbclaw.net

*Attorneys for Monster Energy Company*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 29th day of May 2015, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system. The CM/ECF system will send a "Notice of E-Filing" to the attorneys of record in this case.

/s/ Justin R. Gaudio________________
Kevin W. Guynn
Amy C. Ziegler
Justin R. Gaudio
Jessica L. Bloodgood
Greer, Burns & Crain, Ltd.
300 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
312.360.0080
312.360.9315 (facsimile)
kguynn@gbclaw.net
aziegler@gbclaw.net
jgaudio@gbclaw.net
jbloodgood@gbclaw.net

*Attorneys for Monster Energy Company*