**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MONSTER ENERGY COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 15 C 277 |
| | ) | |
| MENG CHUN JING, et al., | ) | Judge Jorge L. Alonso |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are two motions: (1) plaintiff's motion for summary judgment and entry of a statutory damages award against defendants Meng Chun Jing and Meng Chun Lin a/k/a Anna Meng; and (2) plaintiff's motion for summary judgment and entry of a statutory damages award against defendant Ding You Cai a/k/a Tim Ding, which are granted for the reasons explained below.

**BACKGROUND**

Plaintiff, Monster Energy Company ("Monster"), sells energy drinks and owns several federally-registered trademarks, including "MONSTER ENERGY" and a "Claw Icon Mark," which looks like a clawed-out letter "M." Monster uses its marks not only on beverages, but also on other products such as apparel, accessories, and sporting goods. It has brought this action for trademark infringement and counterfeiting, false designation of origin, and violation of the Illinois Uniform Deceptive Trade Practices Act ("IDTPA") against a number of defendants who are, according to the Second Amended Complaint, "online counterfeiters who trade upon [Monster's] reputation and goodwill by selling and/or offering for sale unauthorized and

unlicensed counterfeit products featuring [Monster's] registered trademarks." (Second Am. Compl. ¶ 3.)

The Court has entered default judgment against most of the defendants, and plaintiff has voluntarily dismissed several others. The only remaining defendants are Meng Chun Jing and Meng Chun Lin a/k/a Anna Meng, who operate an online store called "Ulgen Accessories" ("Ulgen") and Ding You Cai a/k/a Tim Ding, who operates an online store called "Motorcycle Accessseries [sic] Market" ("Motorcycle")."[1] Plaintiff moves for summary judgment against them.

## DISCUSSION

**A.     Summary Judgment Standards**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In considering such a motion, the Court construes the evidence and all inferences that reasonably can be drawn therefrom in the light most favorable to the non-moving party. *See Kvapil v. Chippewa Cnty., Wis.*, 752 F.3d 708, 712 (7th Cir. 2014). "Summary judgment should be denied if the dispute is 'genuine': 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Talanda v. KFC Nat'l Mgmt. Co.*, 140 F.3d 1090, 1095 (7th Cir. 1998) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)); *see also Bunn v. Khoury Enters., Inc.*, 753 F.3d 676, 681-82 (7th Cir. 2014). The court will enter summary judgment against a party who does not "come forward with evidence that

---

[1]     Previously, the Court entered a temporary restraining order freezing defendants' assets, (R. 27), and subsequently converted that order into a preliminary injunction, (R. 35). The assets held in defendants' PayPal accounts have been frozen. (R. 77, Decl. of Justin Gaudio ¶¶ 2-3; R. 82, Decl. of Justin Gaudio ¶¶ 2-3.)

would reasonably permit the finder of fact to find in [his] favor on a material question." *Modrowski v. Pigatto*, 712 F.3d 1166, 1167 (7th Cir. 2013).

**B.     Local Rule 56.1**

Local Rule 56.1(a) requires a moving party to file a statement of material facts as to which the party contends there is no genuine issue and that entitle the party to a judgment as a matter of law and include within each paragraph "specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph." Local Rule 56.1(b) requires each party opposing summary judgment to submit "a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." "When a responding party's statement fails to dispute the facts set forth in the moving party's statement in the manner dictated by the rule, those facts are deemed admitted for purposes of the motion." *Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 632 (7th Cir. 2009). The Seventh Circuit has "consistently held that a failure to respond by the nonmovant as mandated by the local rules results in an admission." *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003). Although counsel have filed appearances and answers on defendants' behalf, defendants have failed to file anything in response to Monster's motions. Therefore, the Court deems admitted all of the facts set forth in Monster's Local Rule 56.1 statements, which are properly supported by evidence in the record.

**C.     Summary Judgment**

To prevail on its trademark infringement, counterfeiting, and false designation of origin claims, Monster must establish that its marks are protectable and that the defendants' unauthorized use of the marks was likely to cause confusion among consumers. *See CAE, Inc. v.*

3

*Clean Air Eng'g, Inc.*, 267 F.3d 660, 673-74 (7th Cir. 2001). The analysis is the same for Monster's IDTPA claim. *Persis Int'l, Inc. v. Burgett, Inc.*, No. 09 C 7451, 2012 WL 4176877, at *6 (N.D. Ill. Sept. 18, 2012).

Monster has submitted uncontradicted evidence that it has twelve federally-registered trademarks for "MONSTER ENERGY" and various permutations of its Claw Icon (the "Marks"). Those registrations are "prima facie evidence of the validity of the registered mark[s] . . . and of the registrant's exclusive right to use the registered mark[s]." *See CAE*, 267 F.3d at 673. Therefore, Monster has met its burden of showing that its Marks are valid and protectable.

As for unauthorized use, Monster has submitted uncontradicted evidence that without Monster's authorization, defendants sold and offered for sale into the United States on the web site AliExpress.com knockoff products featuring marks that are substantially indistinguishable from Monster's Marks. (R. 12, Decl. of Bruce Kingsland ¶¶ 13-14; R. 76, Pl.'s L.R. 56.1 Stmt. ¶¶ 2-5; R. 24-10 at 114-17; R. 81, Pl.'s L.R. 56.1 Stmt. ¶¶ 2-5; R. 24-10 at 41-44.)

The Seventh Circuit held in an unpublished opinion that where "one produces counterfeit goods in an apparent attempt to capitalize upon the popularity of, and demand for, another's product, there is a presumption of a likelihood of confusion." *Microsoft Corp. v. Rechanik*, 249 F. App'x 476, 479 (7th Cir. 2007). Accordingly, the Court can presume a likelihood of confusion from defendants' use of counterfeit Monster marks. But even if the Court cannot so presume, Monster has presented evidence that is so one-sided that there is no doubt it is entitled to summary judgment under the Seventh Circuit's traditional seven-factor test for assessing likelihood of confusion. The test analyzes the following factors: "(1) the similarity between the marks in appearance and suggestion; (2) the similarity of the products; (3) the area and manner of concurrent use; (4) the degree of care likely to be exercised by consumers; (5) the strength of

the plaintiff's mark; (6) any evidence of actual confusion; and (7) the intent of the defendant to 'palm off' his product as that of another." *Sorensen v. WD-40 Co.*, No. 14-3067, 2015 WL 3634612, at *8 (7th Cir. June 11, 2015).

Monster has submitted screen shots from AliExpress.com that contain photographs of defendants' counterfeit goods (a hat offered for sale by Ulgen and a keychain offered for sale by Motorcycle). (R. 24-10 at 41-44, 114-15.) Defendants' goods bear marks that look so nearly identical to Monster's Marks that the viewer would be likely to associate defendants' products with that of plaintiff. The products are the kind that the public would reasonably attribute to a single source, Monster. There is no genuine issue as to first two factors of the analysis.

Monster submits little evidence with regard to the third factor except that it distributes products bearing its genuine Marks throughout the United States and defendants offered their counterfeit goods to the same market. (R. 12, Kingsland Decl. ¶¶ 9, 12-13.) This factor only weakly supports plaintiff, but nevertheless there is no genuine issue as to the area and manner of concurrent use.

When considering the fourth factor, courts "assume that the more widely accessible and inexpensive the products and services, the more likely that consumers will exercise a lesser degree of care and discrimination in their purchases." *Sorensen*, 2015 WL 3634612, at *12 (brackets and internal quotation marks omitted). "When customers use a lesser degree of care, this supports a finding that there is a likelihood of confusion." *Id.* The products at issue here are small, very inexpensive accessories, and the consumer base is a broad group of internet users. Consumers are unlikely to exercise a great deal of care, so this factor weighs in Monster's favor.

The fifth factor also weighs in plaintiff's favor. "A mark's strength ordinarily corresponds to its economic and marketing strength." *Id.* at *13. Monster has submitted

uncontradicted evidence that it has spent substantial time and money developing, promoting, and advertising its Marks and has used them on energy drinks, apparel and accessories. (R. 12, Kingsland Decl. ¶¶ 9-10.) It has used its widely-recognized Marks continuously for more than a decade, and its genuine items have been worn or used by numerous high-profile athletes and entertainers. (*Id.* ¶¶ 8-11.)

Monster offers no evidence of actual confusion and argues instead that actual confusion can be inferred because defendants are selling knockoff Monster products that use counterfeit marks. It cites no authority for this proposition. But evidence of actual confusion is not required to prove *likelihood* of confusion, so this factor is neutral. *See CAE*, 267 F.3d at 685-86.

The final factor is defendants' intent, which is relevant where the defendant intended to palm off its goods as that of plaintiff. *See id.* at 686. Given defendants' use of identical marks on nearly identically-designed products, it is evident that defendants intended to confuse and deceive consumers into believing that their products are affiliated with or made by Monster.

Based on the uncontradicted evidence, the seven-factor test weighs overwhelmingly in favor of plaintiff. A likelihood of confusion exists as a matter of law; no reasonable jury could find in defendants' favor on this issue. The Court grants plaintiff's motions for summary judgment.

**D.    Remedies**

A trademark owner may elect to recover an award of statutory damages for any use of a counterfeit mark in connection with the sale, offering for sale, or distribution of goods or services. *See* 15 U.S.C. § 1117(c). The Lanham Act provides for a minimum of $1,000 and a maximum of $200,000 per counterfeit mark. *See* 15 U.S.C. § 1117(c)(1). If the Court finds that

the trademark infringement was committed willfully, plaintiff can recover up to $2,000,000 per counterfeit mark. *See* 15 U.S.C. § 1117(c)(2).

Monster asserts that defendants' infringement was knowing and willful, and it seeks to recover awards of statutory damages against them in the amount of $2,000,000. (R. 75 & 80, Pl.'s Mems. Supp. Mots. Summ. J. at 14-15.) "Willful infringement may be attributed to the defendant's actions where he had knowledge that his conduct constituted infringement or where he showed a reckless disregard for the owner's rights." *Deckers Outdoor Corp. v. Does 1-55*, No. 11 C 10, 2011 WL 4929036, at *5 (N.D. Ill. Oct. 14, 2011) (citing *Lorillard Tobacco Co. v. S & M Cent. Serv. Corp.*, No. 03 C 4986, 2004 WL 2534378, at *7 (N.D. Ill. Nov. 8, 2004)). Knowledge can be inferred from a defendant's conduct. *Id.* The Court concludes that defendants willfully infringed Monster's Marks. Products bearing Monster's Marks are widely recognized and associated exclusively with Monster, and the marks defendants used are virtually identical to Monster's.

District courts have "wide discretion" in awarding statutory damages. *Chi–Boy Music v. Charlie Club, Inc.*, 930 F.2d 1224, 1229 (7th Cir. 1991). The Court can consider various factors such as "the difficulty or impossibility of proving actual damages, the circumstances of the infringement, and the efficacy of the damages as a deterrent to future copyright infringement." *Id.* at 1229. Courts have also considered the value of a plaintiff's brand "and the efforts taken to protect, promote and enhance that brand." *Lorillard*, 2004 WL 2534378, at *6.

Several of these factors favor a large statutory damages award here. It is difficult for Monster to prove actual damages. The internet platform defendants used, AliExpress.com, is a busy website that provides the potential to reach a vast customer base. (R. 75 & 80, Pl.'s Mems. Supp. Mots. Summ. J. at 17-18 (citing R. 77 & 82, Gaudio Decl. ¶ 4).) Monster has made

significant efforts to promote and protect its brand. (R. 12, Kingsland Decl. ¶¶ 9-10, 12-13.) Its Marks are well-known and valuable. And the award must provide a sufficient deterrent to ensure that defendants will not engage in further infringing conduct. The Court declines, however, to award the full $2,000,000 that Monster requests. Monster fails to submit any evidence indicating that either Ulgen or Motorcycle is a large-scale counterfeiting operation. Moreover, the assets in defendants' seized PayPal accounts are modest—$15,941.95 for Ulgen and $8,512.60 for Motorcycle. (R. 77 & 82, Gaudio Decl. ¶ 2.) Monster argues that the Court should award statutory damages of $2 million against Ulgen and Motorcycle because it has already awarded that amount against the defaulting defendants in this action. But Ulgen and Motorcycle are not in default. (They did, however, fail to respond to the motions for summary judgment.)

Because this is not a case of default, and based on the mitigating factors identified above, the Court finds it appropriate to halve the statutory damages Monster seeks. Pursuant to 15 U.S.C. § 1117(c)(2), the Court awards Monster statutory damages in the amount of $1,000,000 against Ulgen and $1,000,000 against Motorcycle.

Monster also seeks the entry of a permanent injunction enjoining defendants from selling counterfeit Monster products or otherwise violating its rights in the Marks, as well as transferring to Monster all assets in defendants' PayPal accounts. The Court has the power to enter such an injunction "according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of" a trademark. 15 U.S.C. § 1116(a). Given that defendants' conduct was willful and that they have failed to respond to plaintiff's motions, the Court grants the requested injunctive relief.

In addition, Monster seeks an award of attorneys' fees and costs. As the prevailing party, it is entitled to costs under Federal Rule of Civil Procedure 54(d)(1). And, absent extenuating

circumstances, courts "shall" award reasonable attorneys' fees in cases involving the intentional use of a counterfeit mark. 15 U.S.C. § 1117(b). Accordingly, in light of defendants' willful counterfeiting, Monster is awarded its reasonable attorneys' fees and costs.

## CONCLUSION

Plaintiff's motions for summary judgment and entry of statutory damages awards [74, 79] are granted. The Court will enter a separate judgment in favor of plaintiff and against defendants Meng Chun Jing and Meng Chun Lin a/k/a Anna Meng d/b/a Ulgen Accessories in the amount of $1,000,000 and against defendant Ding You Cai a/k/a Tim Ding d/b/a Motorcycle Accessseries [sic] Market in the amount of $1,000,000. The Court also will enter a permanent injunction against defendants, as requested by plaintiff, and award plaintiff its reasonable attorneys' fees and costs. Plaintiff is directed to file by July 27, 2015 a fee petition and supporting documentation.

**SO ORDERED.**  ENTERED:  July 6, 2015

_____
**JORGE L. ALONSO**
**United States District Judge**